IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WAYOUNG CHAN,<br><br>Defendant. | CR NO. 15-00224 DKW<br><br>**ORDER REGARDING RESTITUTION** |

# ORDER REGARDING RESTITUTION

## INTRODUCTION

On October 1, 2015, pursuant to a guilty plea to Count I of the Indictment, this Court sentenced Defendant Wayoung Chan for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4) and (b)(2). At sentencing, the Court imposed a term of imprisonment and ordered restitution to certain victims pursuant to 18 U.S.C. § 2259(b). For the reasons stated on the record at sentencing, and as discussed more fully below, the Court hereby adopts the Government's methodology for determining restitution under 18 U.S.C. § 2259(b), based upon the principles enounced in *United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013), and *Paroline v. United States*, 134 S.Ct. 1710 (2014).

# DISCUSSION

## I. Restitution Under Section 2259(b)

### A. Generally

Courts are required to order the payment of restitution to minor victims of certain sexual offenses. Section 2259 of Title 18 provides that "the court shall order restitution for any offense under [Chapter 110—Sexual Exploitation and Other Abuse of Children]." 18 U.S.C. § 2259(a). Section 2259(b) further provides that an "order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses. . . ." 18 U.S.C. § 2259(b)(1). Losses include medical services relating to psychiatric or psychological care and necessary transportation expenses. 18 U.S.C. § 2259(b)(3)(A), (C). "[T]he term 'victim' means the individual harmed as a result of a commission of a crime under [Chapter 110]." 18 U.S.C. § 2259(c). "The issuance of a restitution order under this section is mandatory." 18 U.S.C. § 2259(b)(4).

The offense for which Defendant was convicted—knowingly possessing visual depictions of minors engaging in sexually explicit conduct that traveled in interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(4)(B)—is a crime under Chapter 110. Restitution required to be paid under "§ 2259 is intended to compensate victims for losses caused by the offense of conviction."

*Paroline v. United States*, 134 S.Ct. 1710, 1720 (2014). Restitution is required in the full amount of the victim's losses suffered as a proximate result of the offense and, specifically, the incurred and future expenses for therapy and counseling for the victim of sexual abuse. 18 U.S.C. § 2259(b)(3).

Restitution orders under section 2259 are issued and enforced in accordance with 18 U.S.C. § 3664 "in the same manner as an order under section 3663A." 18 U.S.C. § 2259(b)(2). The Government bears the burden of proving the amount of the victim's losses by a preponderance of the evidence, and the Court must resolve any disputes as to the proper amount or type of restitution according to the same standard of proof. 18 U.S.C. § 3664(e).

**B.     Restitution After *Paroline***

*Paroline* "determine[d] the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 134 S.Ct. at 1716. *Paroline* addressed the methodology to be used by the district courts in crafting restitution orders, and confirmed that such awards were to be made in the exercise of the Court's "discretion and sound judgment." *United States v. Rogers*, 758 F.3d 37, 39 (1st Cir. 2014) (citing *Paroline*, 134 S.Ct. at 1728). More specifically, the Supreme Court provided the following guidance:

There remains the question of how district courts should go about determining the proper amount of restitution. At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. . . .

There are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development. Doing so would unduly constrain the decisionmakers closest to the facts of any given case. But district courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . . , then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense. The resulting amount fixed by the court would be deemed the amount of the victim's general

> losses that were the "proximate result of the offense" for purposes of § 2259, and thus the "full amount" of such losses that should be awarded.

*Paroline*, 134 S.Ct. at 1727-28 (internal citations omitted).

Although *Paroline* provides "rough guideposts," sentencing courts applying these factors have been confronted with the challenging task of determining restitution awards without specific, numeric, or formulaic guidance. It is clear from a review of *Paroline* that this is intentionally so—in order to avoid "unduly constrain[ing]" district courts. Confronted with this challenge, the Court has reviewed recent decisions from courts both within and outside this circuit, post-*Paroline*, which reflect both the thorny nature of this determination, and the varied methods courts have adopted. *See, e.g., United States v. Austin*, 2015 WL 5224917, at *2 (D. Nev. Sept. 8, 2015) ("Acknowledging that a 'theoretical starting point will simply not exist in many cases,'. . . . the Court finds that it is not possible to identify a clear 'starting point' for the restitution awards to Vicky and Cindy.") (citing *United States v. Reynolds*, 2014 WL 4187936, at *5 (E.D. Mich. Aug. 22, 2014)); *United States v. Dileo*, 58 F. Supp. 3d 239, 244 (E.D.N.Y. 2014) ("Though commentators may quarrel over the astuteness of the Supreme Court's professed confidence in the skill of the district courts to divine a true course through this thicket, and whatever the value of the balm its words of praise

provide, *see Paroline*, 134 S.Ct. at 1729 ('[t]here is no reason to believe [district courts] cannot apply the causal standard defined above in a reasonable manner without further detailed guidance at this stage in the law's elaboration ...'), the task seems akin to piloting a small craft to safe harbor in a Nor'easter.  With the bulk of compensable loss long suffered, with potential responsible parties at varying levels of criminal culpability (from physical participant, to producer, to distributor, to consumer/voyeur), to catch as catch can prosecutions and the logical construct that the totality of restitution cannot exceed the totality of actual loss suffered by the identified victim, it is a struggle to conceive of a system that will not exceed loss and perhaps trigger creation of a judicial clearinghouse, where the courts become unseemly paymasters smoothing out restitution contributions among pornographers.  The task of charting passage through these unknown waters is overwhelming."); *United States v. Crisostomi*, 31 F. Supp. 3d 361, 364 (D.R.I. 2014) (noting that a number of the *Paroline* factors "are virtually unknown or unknowable, regardless of the detail available in the record"); *United States v. Campbell-Zorn*, 2014 WL 7215214, at *3 (D. Mont. Dec. 17, 2014) ("These tools provided by *Paroline*, while seemingly useful in a theoretical sense, have proven to have very difficult, and very limited, practical application.").

With this backdrop in mind, the Court turns to the facts and circumstances of this case.

## III. Application in this Case

### A. Overview of Competing Methodologies for Calculating Award

The Probation Office's Presentence Report ("PSR") calculation, to which the defense does not object, begins with each victim's total loss amount, as supported by expert submissions, reduces that figure by the amount each victim has received to date (calculating the net general loss), divides the result by the total number of restitution orders previously entered, and then assesses the *Paroline* factors, adjusting upward or downward as necessary. The U.S. Attorney's Office calculation similarly begins with each victim's total loss amount, but then divides by the number of restitution orders previously entered *without* first subtracting the total amount of losses already paid. The *Paroline* factors are then similarly applied. These two methodologies are described more fully below.[1]

The Probation Office's approach differs from that of the Government in one material way: the former takes into account the total amount of restitution already paid by other defendants who have damaged the same victim. While the Probation

---

[1] The Court's discussion is limited to these two methods of calculating the appropriate amount of the award because there is no objection from either side regarding any other restitution issue. Defendant concurs in the award of, and foundation for, restitution, as suggested by the Probation Office.

Office's approach is the one Defendant suggests the Court adopt, the Court declines to do so.

First, the Government's methodology is based on *United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013),[2] as modified by an application of the *Paroline* factors.[3] The Government identifies several district courts that have employed precisely this approach. *See, e.g., United States v. Hernandez*, 2014 WL 2987665 (E.D. Cal. June 30, 2014); *United States v. Galan*, 2014 WL 3474901 (D. Or. July 11, 2014); *United States v. Randjelovich*, 2015 WL 4095655 (E.D. Cal. July 6, 2015); *United States v. Watkins*, 2014 WL 3966381 (E.D. Cal. Aug. 12, 2014); *United States v. Massa*, 2014 WL 6980503 (S.D. Cal. Dec. 9, 2014); *United States v. Wencewicz*, 63 F. Supp. 3d 1238 (D. Mont. 2014). As compared with the Probation Office's recommendation, the Court agrees that reducing the victim's loss amount to arrive at, and utilize, a net loss figure, is not appropriate because that would both reward the defendant for payments made by others, which had

---

[2] *Gamble* and *Paroline* are inconsistent in some respects. For instance, *Gamble* includes only general losses after the date of the offense, 709 F.3d at 554, whereas *Paroline* permits restitution based on the "entirety of the victim's general losses from the trade in her images, which are the product of thousands of offenders," 134 S.Ct. at 1728, and may allow courts, in appropriate circumstances, to account for losses that took place before defendant's criminal conduct. 134 S.Ct. at 1726.

[3] The Government recognizes the limits of a pure-*Gamble* approach: (1) it could result in too high an award where there are a very small number of prior restitution orders -- for example, where the pornographic material is newly created or distributed; or (2) it could result in too low an award where there are a large number of restitution awards -- for example, for a defendant convicted well-after the widespread distribution of the material.

nothing to do with the defendant, and, over time, reduce the restitution award in any particular case.  In other words, if the Probation Office's approach were to be consistently employed, with each successive recovery, one would expect the amount of restitution awarded to be reduced, even if the conduct at issue were no different.  Similarly situated defendants should pay similar awards, not less merely because they were sentenced at a later time in the sequence of offenders.

Second, dividing the victim's loss by the number of prior awards already takes into account prior restitution orders.  Adopting the Probation Office's net loss approach, in some ways, serves as double-counting.

Third, because the Probation Office's approach would, in virtually every circumstance, result in an award less than (and certainly not greater than) the Government's approach, adopting the Probation Office's suggestion would result in relative delay in achieving 18 U.S.C. § 2259(b)(1)'s stated goal of full compensation for the victim.

Fourth, the Government's approach is preferable because, in many contexts, the law favors the victim.  Tort law, for example, demonstrates this through the employment of joint and several liability, alternative liability/burden-shifting, and the collateral source rule.  While this is obviously no tort case, there is perhaps

9

even greater reason to adopt an approach that favors the victim in a case such as this one.

No one would reasonably contend that the victims in section 2252 cases are not among those most deserving of compensation. The methodology proposed by the United States Attorney, which favors these victims, as compared to the perpetrators who would shoulder the burden, seems eminently reasonable as an approach designed to make the victims whole within a reasonable time and well-within the discretion afforded to this Court by *Paroline*.

## **CONCLUSION**

On the basis of the foregoing, the Court hereby adopts the Government's methodology for determining restitution under 18 U.S.C. § 2259(b), as consistent with *Paroline v. United States*, 134 S.Ct. 1710 (2014).

IT IS SO ORDERED.

DATED: October 23, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States of America v. Wayoung Chan*; CR No. 15-00224 DKW;
**ORDER REGARDING RESTITUTION**